IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2010 Session

## KARAH and RYAN DePUE, et al., v. CHARLES D. SCHROEDER, et al.

**Appeal from the Circuit Court for Knox County**
**No. 2-262-09     Hon. Harold Wimberly, Judge**

**No. E2010-00504-COA-R9-CV - Filed February 15, 2011**

Plaintiffs filed their Complaint alleging medical malpractice against numerous healthcare providers on May 26, 2009. They alleged that they had given the notice requirements of Tenn. Code Ann. §29-26-121(a) prior to April 8, 2009 to the defendants. The defendants filed several motions, including motions for summary judgment, stating that plaintiffs failed to comply with the notice requirements of Tenn. Code Ann. §29-26-121. The record establishes that plaintiffs did not give the requisite notice, "at least 60 days before the filing of their Complaint". In response to the motions for summary judgment the Trial Court excused compliance with the code section and defendants appealed. On appeal, we reverse the holding of the Trial Court on the grounds that non-compliance with the code section could only be excused upon the showing of extraordinary cause.

**Tenn. R. App. P.9 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., joined and JOHN W. MCCLARTY, J., dissented and filed a separate opinion.

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Associate Solicitor General, and Heather C. Ross, Senior Counsel, Nashville, Tennessee, for the appellant/intervenor, State of Tennessee.
Robert H. Watson, Jr., and Emily A. Cleveland, Knoxville, Tennessee, for the appellants, John Showalter, M.D., and Summit Medical Group, PLLC.
James H. London, Jennifer Pearson Taylor, and Mark A. Castleberry, Knoxville, Tennessee, for the appellant, Joseph P. Bruner, M.D.
Rick L. Powers, Knoxville, Tennessee, for the appellant, Fort Sanders Perinatal Center.
Debra A. Thompson, Knoxville, Tennessee, for the appellants, Charles David Schroeder,

M.D., and OB/GYN Professionals of East Tennessee, P.C.

Stephen C. Daves, Knoxville, Tennessee, for the appellants, J. Frederick Wolfe, M.D., and Rheumatology Consultants, P.L.L.C.

Donna Keene Holt, Knoxville, Tennessee, for the appellees, Karah and Ryan DePue.

**OPINION**

Plaintiffs, Karah and Ryan Depue, individually and as parents and next friends of Jackson James Depue, filed their Complaint on May 26, 2009, against Charles Schroeder, M.D., and OBGYN Professionals of East Tennessee, P.C., Joseph Bruner, M.D., and Ft. Sanders Perinatal Center, J. Frederick Wolfe, M.D., and Rheumatology Consultants, PLLC, and John Showalter, M.D., and Summit Medical Group.

In the Complaint they asserted that they had complied with the notice requirements of Tenn. Code Ann.§29-26-121(a) by giving notice prior to April 8, 2009. They alleged that when the plaintiff Karah Depue became pregnant, she had a history of an episode of severe mononucleosis, atypical rheumatoid arthritis that led to a bilateral hip replacement, and a drug-induced episode of lupus. She averred that she developed a fever, went to Parkwest Hospital on March 8, 2008, and was found to have elevated liver enzymes, and was advised to transfer to Fort Sanders Hospital because Fort Sanders had high-risk OBs, where the remaining defendants took over her care.

Plaintiffs averred that on April 8, the baby was born premature at 26 weeks, and Ms. Depue was transferred to the University of Alabama for a liver transplant. Plaintiffs averred that they began steroid treatment on Ms. Depue at the University of Alabama and her liver function improved, so she did not have the transplant. Plaintiffs alleged that defendants were negligent and failed to properly diagnose and treat plaintiff, and that their failure caused plaintiff severe medical problems for which she still required treatment, that she was unable to return to her job as a teacher, and suffered emotional distress. Further, that the baby had multiple problems due to his premature birth and required numerous surgeries and long-term treatment, and would suffer the effects of that for the rest of his life. Also, that Mr. Depue suffered loss of consortium and emotional distress, and had incurred substantial expenses and damages.

Showalter and Summit moved to dismiss, or in the Alternative for a More Definite Statement, asserting that plaintiffs' failed to state a claim for relief against them. Bruner filed a Motion to Dismiss for Failure to State a Claim, asserting that plaintiffs had failed to

-2-

state a claim for relief against him. Bruner also asserted that plaintiffs failed to provide the requisite 60 day notice before filing suit. Wolfe and Rheumatology Consultants filed an Answer, denying any negligence or deviation from the standard of care.

Plaintiffs filed a Motion to Amend, seeking to address the Motions filed by defendants, this to show that adequate notice was given and to provide a more definite statement with regard to certain facts. Plaintiffs filed an Amended Complaint, and attached an Affidavit of Donna Keene Holt, who stated that she was the attorney for plaintiffs, that plaintiffs came to see her just before the one year anniversary of the baby's birth, and did not know the names of the doctors who had treated Ms. Depue, but provided medical records on April 1. Ms. Holt stated she gave notice to Schroeder and Bruner on April 3, 2009, and went to review the medical records at Parkwest and Ft. Sanders. Ms. Holt stated that after reviewing the records at both hospitals, she gave notice to the other defendants on or before April 7, 2009. She also stated she sought the assistance of the defendants in identifying other potential actors or in determining who was truly at fault, but they refused to cooperate. She acknowledged that she left town on May 22, 2009 and left the Complaint and Summons to be filed by another attorney, and that they were filed on May 26, 2009, which was only 53 days from the first notice rather than 60 days. Ms. Holt stated that defendants could demonstrate no prejudice to their ability to defend the case resulting from the "early" filing. She attached the notices that she sent to defendants, as well as other correspondence with them regarding the case.

Plaintiffs then filed a Certificate of Good Faith, asserting they had consulted with one or more experts who provided a signed written statement that there was a good faith basis for maintaining the action as to each of the defendants. Fort Sanders Perinatal Center then filed a Motion to Dismiss or for a More Definite Statement. Wolfe and Rheumatology Consultants filed a Motion for Summary Judgment, asserting the complaint should be dismissed because plaintiffs failed to comply with the requirements of Tenn. Code Ann. §29-26-121, by failing to provide the requisite 60 day notice before filing their complaint. They filed a Statement of Undisputed Facts and an Affidavit of Dr. J. Frederick Wolfe, stating that the notice was sent on April 6, 2009, and the Complaint was filed on May 26, 2009. Plaintiffs filed a Response to the Motions filed by Showalter, Summit, and Bruner, stating they had alleged sufficient facts to state a claim against these defendants.

Showalter and Summit also filed a Motion for Summary Judgment, asserting plaintiffs' failure to comply with the notice requirement of Tenn. Code Ann. §29-26-121. Dr. Schroeder and OBGYN Professionals filed an Answer, denying any negligence or liability. Plaintiffs filed a Response to the outstanding Motions, adopting their prior filings with regard to the Amended Complaint. Schroeder and OBGYN Professionals then filed a Motion to Dismiss, asserting plaintiffs' failure to comply with the notice requirements of

Tenn. Code Ann. §29-26-121.

Plaintiffs then filed a Second Amended Complaint, asserting they had complied with the spirit of Tenn. Code Ann. §29-26-121 by sending the required notices (even though they did not wait the full 60 days before filing their complaint). Plaintiffs asked the Court to excuse the technical failure pursuant to Tenn. Code Ann. §29-26-121(b). Plaintiffs also filed a Supplemental Response to the Motions to Dismiss, stating that with regard to Dr. Bruner, he was made aware of the claim on April 3, 2009, gave Susan Anderson permission to accept the notice on his behalf, and then provided his home address where the other correspondence was sent (and was not returned). Plaintiffs further asserted that no prejudice had been shown to the other defendants by the "early" filing.

Plaintiffs filed an Affidavit from Jackie Tavares, Ms. Holt's legal assistant, who stated that on April 3, 2009, she had gone to the office address listed for Dr. Bruner with the Tennessee Department of Health, and was told that he had left the office on December 31, 2008. Ms. Tavares stated that she spoke to the office manager, Susan Anderson, who called Dr. Bruner on the phone, and then told Ms. Tavares that he had authorized her to accept the notice on his behalf. Ms. Tavares stated that Ms. Anderson gave her Dr. Bruner's home address, which she used for all further correspondence. Ms. Tavares stated that they later learned that Dr. Bruner had moved to Texas, and obtained his address there.

Schroeder and OBGYN Professionals filed another Answer, once again asserting that plaintiffs' failed to provide proper notice. Showalter and Summit filed an Answer, also asserting plaintiffs' failed to provide proper notice.

The Court held a hearing on October 30, 2009, on the Motions to Dismiss and for Summary Judgment, and entered an order following same on November 6, 2009. The Court found plaintiffs had requested that the Court exercise its discretionary power granted in Tenn. Code Ann. §29-26-121(b) to waive any deficiency in the notice provision. The Court found that, based on the arguments of counsel and the record as a whole, the waiver should be granted. The Court held there was substantial compliance with the statute and no prejudice resulted from the premature filing of the complaint. The Court denied the Motions to Dismiss and for Summary Judgment.

Bruner filed a Motion for an Interlocutory Appeal, seeking review of the Court's decision to waive the deficiency in the notice requirement, as did Wolfe and Rheumatology Consultants, Schroeder and OBGYN Professionals, Showalter and Summit, and Fort Sanders Perinatal Center. The Court then entered an Order granting interlocutory appeal, and plaintiffs gave notice to the Attorney General that they were challenging the constitutionality of the statute. This Court entered an Order granting interlocutory appeal to defendants.

The issues presented to this Court are:

1.     Whether the Trial Court erred in holding that compliance with the sixty day notice requirement of Tenn. Code Ann. §29-26-121 should be excused if the complaint is filed less than sixty days after notice is given?

2.     Whether the Trial Court erred in holding that simple attorney oversight constitutes "extraordinary cause" such that compliance with Tenn. Code Ann. §29-26-121 should be excused?

3.     Whether service of the notice was proper on Dr. Bruner where it was served on the office manager of his former employer, without his actual authority?

4.     Whether plaintiffs have standing to challenge the constitutionality of Tenn. Code Ann. §29-26-121 when they have not suffered any injury resulting from its requirements?

5.     Whether plaintiffs' challenge to the constitutionality of Tenn. Code Ann. §29-26-121 is properly before this Court?

6.     Whether Tenn. Code Ann. §29-26-121 is constitutional?

Plaintiffs challenge the constitutionality of Tenn. Code Ann. §29-26-121, raising arguments of equal protection. They only gave notice to the Attorney General's Office of their constitutional challenge after the Trial Court granted defendants' motions for interlocutory appeal. Plaintiffs did not seek interlocutory appeal, and the constitutionality issue was not certified as one of the issues this Court would address on interlocutory appeal. Thus, the issues regarding constitutionality cannot be raised in this appeal. *See Montcastle v. Baird*, 723 S.W.2d 119 (Tenn. Ct. App. 1986).

Tenn. Code Ann. §29-26-121 provides:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider against whom the potential claim is being made at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state. Attached to the written notice shall be a list of all health care providers to whom notice is being given pursuant to this section.

(2) For purposes of this section, notice shall include actual written notice provided to the health care provider or the provider's authorized agent; or notice by registered mail, return receipt requested, to the health care provider or the provider's authorized agent; or notice by overnight delivery using a nationally recognized carrier.

(b) If a complaint is filed in any court alleging a claim for medical malpractice, the pleadings shall state whether each party has complied with subsection(a) and shall provide such evidence of compliance as the court may require to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

(c) If notice is given as provided in this section, the applicable statutes of limitations and repose shall be extended up to a period of ninety (90) days, and this extension shall apply to all parties and potential parties. In no event shall this section operate to shorten the statutes of limitations or repose applicable to any action asserting a claim for medical malpractice. Once a complaint is filed alleging a claim for medical malpractice, the notice provisions of this section shall not apply to any person or entity that is made a party to the action thereafter by amendment to the pleadings as a result of a defendant's alleging comparative fault.

Plaintiffs' counsel admits that she did not comply with the above notice provision, and that the Complaint was filed about 53 days after the notice was given, at the latest. Plaintiffs' counsel argues that she was not consulted by plaintiffs until just days before the anniversary date of the baby's birth, and that she did the best she could in a short time frame to identify and give notice to all necessary defendants. She states that she complied with the "spirit" of the statute because she gave notice, culled out one potential defendant who actually did not treat Ms. Depue, and was able to file her Certificate of Good Faith (showing that a medical expert had been consulted and he verified that there was a valid claim based on the information given) within the requisite time frame. She argues that her failure to wait the full 60 days before filing the complaint should not be fatal to her clients' claims. The Trial Court agreed with plaintiffs' counsel and excused compliance with the notice period as provided in subsection (b).

Defendants counter that the Court should not have excused compliance with the notice requirements of Tenn. Code Ann. §29-26-121, as plaintiffs failed to show "extraordinary cause". Defendants argue that the plain language of the statute makes clear the action must be filed at least 60 days after proper notice is given, and that plaintiffs' admitted failure to do so in this case should result in dismissal. Defendants argue the Court's job is to "carry out the legislature's intent without broadening or restricting the statute beyond its intended scope", and that the statute should be enforced as written, with every word being given its

full effect "if the obvious intention of the Tennessee General Assembly is not violated by so doing." *See Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99 (Tenn. 2006); *In re CKG*, 173 S.W.3d 714 (Tenn. 2005); *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676 (Tenn. 2002).

This Court has previously held that the purpose of this legislation is "to give the defendant the opportunity to investigate and perhaps even settle the case before it is actually filed. At a minimum, it will give the defendant the opportunity to gather information before suit is filed and should eliminate the need for extensions of time to answer the complaint or slow-walk discovery." *Howell v. Claiborne and Hughes Health Ctr.*, 2010 WL 2539651 (Tenn. Ct. App. June 24, 2010). The *Howell* case is one of few cases that address these notice provisions, however, the facts in it were substantially different than those in the case at bar. In *Howell,* the plaintiff had previously nonsuited the case, and then refiled within the time allowed by the savings statute, but without giving the requisite notice to defendants as required by the newly-enacted notice requirements of Tenn. Code Ann. §29-26-121.

This Court recognized that a case with almost identical facts had recently been decided by the federal court. *See Jenkins v. Marvel*, 683 F. Supp. 2d 626 (E. D. Tenn. Jan. 14, 2010). This Court adopted the reasoning of the *Jenkins* decision, and stated as follows:

> In considering the motion to dismiss, the Jenkins court first compared Tennessee's statute to a similar statute in Texas, Texas Civil Practice and Remedies Code § 74.051 and the intent behind the Texas statute as found by Texas courts. The Jenkins court found the Texas statute helpful as the Tennessee statute and the Texas statute were very similar. As stated by the Jenkins court, the purpose behind the Texas statute was to "facilitate discussion of the merits of a potential health care claim and thereby initiate amicable settlement negotiations," and to "facilitate the early identification of unmeritorious claims."
>
> The court also noted that § 74.051(b) required plaintiffs to include a statement of compliance in their complaint and provided that plaintiffs may have to provide additional evidence of compliance.
>
> The Jenkins court then reviewed the legislative history behind the Tennessee statute, noting that there was no Tennessee case law discussing the purpose behind the statute. The Jenkins court found that the State of Tennessee Senate Republican Caucus newsletter for the week of April 2, 2007 discussed the purpose behind the new requirements. The newsletter stated "[t]he legislation is designed to reduce the number of frivolous lawsuits filed in Tennessee each year ... by requiring early evaluation and streamlined disclosure of medical records." The Jenkins court also

considered an April 24, 2008 news release from the Senate Republican caucus which provided:

> The State Senate has approved and sent to the governor major tort reform legislation aimed at weeding out meritless medical malpractice lawsuits.
>
> * * *
>
> Key provisions in this bill include:
>
> • Notice would be provided at least two months before a lawsuit is filed to help resolve the case before it goes to court.

Based on this history, the Jenkins court found that the purpose behind the Tennessee statute was similar to the purpose behind the Texas statute-"to provide notice to potential parties and to facilitate early resolution of cases through settlement."

* * *

We find that the case before us is virtually identical to Jenkins. As in Jenkins, the Appellant filed a complaint which included allegations of medical malpractice before the notice requirement was in effect and subsequently non-suited the first action. Then, as in Jenkins, mere days after the amendments went into effect, the Appellant re-filed the complaint which again included allegations of medical malpractice. As in Jenkins, the defendants had actual notice of the claim at least one year before the Appellant filed the current action by virtue of the previously filed claim. Finally, as in Jenkins, the Appellant filed a Certificate of Good Faith wherein the Appellant's attorney certified that he had consulted with an expert, competent to testify under Tenn.Code. Ann. § 29-26-115, and that there was a good faith basis to maintain the action.

We recognize that Jenkins is not binding upon this Court. However, we too are faced with deciding this case with no Tennessee case law discussing the purposes behind the notice requirement and the "extraordinary cause exception" found in Tenn.Code. Ann. § 29-26-121 (2008). After reviewing the requirements as they existed in 2008, the subsequent amendments to Tenn.Code Ann. § 29-26-121 which went into effect on July 1, 2009, the reasoning in Jenkins, and commentary from others discussing the reform to Tennessee's Medical Malpractice Act in 2008 and 2009, this Court finds the reasoning in Jenkins sound and will apply the same analysis to this case. The purpose behind Tenn.Code. Ann. § 29-26-121 and other recent amendments to the Medical

Malpractice Act was to provide notice to health care providers of potential claims against them so that they might investigate the matter and perhaps settle the claim, and also to reduce the number of meritless claims which were filed. However, the Tennessee legislature recognized the need to create an exception to the notice requirement so that it would not be an absolute bar to all claims whatsoever for failure to comply with the notice requirements. The legislature created such an exception by providing that "[t]he court has discretion to excuse compliance with the section only for extraordinary cause shown." Tenn.Code Ann. § 29-26-121(b). Accordingly, we review the trial court's decision not to allow an exception under an abuse of discretion standard. A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining.

We find that the trial court erred in not excusing compliance with the notice requirements. It is well settled that Tennessee law favors the resolution of all disputes on the merits. CHHC had actual notice of the claim more than one year prior to the filing of the present action. Accordingly, CHHC had ample time to investigate and possibly settle the claim. Moreover, the Appellant filed a Certificate of Good Faith demonstrating that the claim had merit. Consequently, all purposes behind the 2008 amendments to the Medical Malpractice act were met. Under the unique circumstances of this case, the trial court should have exercised its discretion and excused compliance with the deadlines imposed by Tenn.Code Ann. § 29-26-121. Therefore, we reverse the trial court's dismissal of the Appellant's medical malpractice claims on the basis that the Appellant failed to comply with Tenn.Code Ann. § 29-26-121.

*Howell,* at pp. 15-16 (internal citations omitted).

Thus, in both *Jenkins* and *Howell,* the defendants had actual notice of the plaintiffs' claims for at least one year prior to the refiling of the complaint, and the *Howell* court found that this fact combined with the filing of a Certificate of Good Faith demonstrating that the claim had merit would constitute "extraordinary cause" to excuse compliance with the notice requirements. In this case, however, while plaintiffs did file a Certificate of Good Faith showing that their claims had merit, the defendants still did not have the requisite notice for 60 days prior to the filing of the complaint.

Plaintiffs argue that this is of no consequence, however, because they complied with the "spirit" of the statute and gave defendants notice and some amount of time to respond, try to settle, or otherwise investigate the claims. Plaintiff's counsel states that her early filing of the complaint was due to 1) her own oversight that 60 days had not elapsed, and 2)

unwarranted concerns about the running of the statute of limitations although Tenn. Code Ann. § 29-26-121 clearly states that the statute of limitations will be tolled for 90 days if notice is given. *See* Brief of Plaintiffs/Appellees. Thus, the issue becomes whether this misunderstanding/oversight of plaintiffs' counsel would constitute "extraordinary cause" as required by the statute to excuse compliance with the notice requirements.

Defendants argue that plaintiffs' counsel cannot show "extraordinary cause" when attorney oversight has been found to not even constitute "good cause" for excusing compliance with a time deadline. *See, H. D. Edgemon Contracting Co. v. King*, 803 S.W.2d 220 (Tenn. 1991). *Barnett v. Elite Sports Medicine,* 2010 WL 5289669 (Tenn. Ct. App. Dec. 17, 2010).

Plaintiffs' counsel has simply failed to demonstrate any facts constituting "extraordinary cause" which would warrant the court's waiver of the statutory notice provision. Plaintiffs' counsel stated that she misread/misunderstood the provision of the statute which extended the statute of limitations for 90 days, and/or that she filed the complaint before the 60 days had expired by oversight. Nothing in her assertions would rise to the level of "good cause" as defined by *Edgemon*, *Plunk*, and *Brandon*, and would certainly not rise to the level of "extraordinary cause" as shown by *Barnett*.

We must review the trial court's decision to excuse the notice period under an abuse of discretion standard, *see Howell*, and thus must determine if the trial court "applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining."

Upon review of the Trial Court's Order, it is clear that the Trial Court applied an incorrect legal standard, as the Trial Court based its decision to grant the waiver on its finding that there was "substantial compliance" with the statute and "no prejudice resulted to defendants" from the premature filing of the complaint. This is improper based on the plain language of the statute, which requires a showing of "extraordinary cause", something obviously much greater than "substantial compliance" or lack of prejudice, as shown by the cases herein cited. The Trial Court's decision was an abuse of discretion and is reversed. Plaintiffs' counsel's action in filing the complaint before expiration of the required notice period was not shown to be the result of any "extraordinary cause" other than pure oversight/misunderstanding on her part.

Plaintiff argues, however, that even if it is determined that she failed to meet the requirement of "extraordinary cause", the proper result is not necessarily dismissal, as the statute is silent as to the effect of a failure to give proper notice. Once again, however, the plain language of the statute requires that a plaintiff "shall give written notice of the potential claim to each health care provider against whom the potential claim is being made at least

sixty (60) days before the filing of a complaint", *Id.* From this language, the legislature intended for compliance to be mandatory. Moreover, the case of *Long v. Hillcrest Healthcare-West,* 2010 WL 1526065 (Tenn. Ct. App. Apr. 16, 2010), makes clear that failure to comply with the notice requirements of Tenn. Code Ann. §29-26-121 will result in dismissal.

As defendants point out, this circumstance is not dissimilar from those statutes that require that certain prerequisites must be met before a complaint can be filed, such as an ADEA plaintiff who must first file a timely charge with the EEOC and receive a notice of right to sue letter, a workers comp plaintiff who must first show that notice was given to the employer, or a plaintiff in a shareholder derivative suit who must first make demand on the board of directors, and failure to do so will result in dismissal of the complaint. *See Humphreys v. Plant Maint. Services, Inc.,* 1999 WL 553715 (Tenn. Ct. App. July 30, 1999); *Masters v. Indus. Garments Mfg. Co., Inc.,* 595 S.W.2d 811 (Tenn. 1980); *Puckett v. Tennessee Easement Co.,* 889 F.2d 1481 (6th Cir. 1989).

In this case, plaintiffs' counsel failed to comply with the plain language of the statute, which requires a 60 day notice to defendants before suit can be filed. Plaintiffs' counsel also failed to demonstrate extraordinary cause which would excuse her failure to comply. Therefore, the complaint must be dismissed. The case is remanded to the Trial Court for the entry of an Order of Dismissal.

The costs of the appeal are assessed to plaintiffs.

_____
HERSCHEL PICKENS FRANKS, P.J.